**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LUCINDA CURRIE | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 24-726 |
| | : | |
| 21ST CENTURY CYBER CHARTER | : | |
| SCHOOL, ANDREA FOX, MOLLIE | : | |
| BURNETT, MICHELE ORNER, | : | |
| VERONICA ANDES, DENISE | : | |
| STROHMAYR, MATTHEW | : | |
| FLANNERY | : | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                                                      June 17, 2024

A charter school's human resources director repeatedly told the school's Chief Executive Officer of alleged waste, overbilling, nepotism, and misconduct including in his fiduciary capacity. The Chief Executive Officer did not like the challenges. The school placed the director on administrative leave while it investigated a former administrative assistant's allegations against the director. The Chief Executive Officer threatened to fire the director without a hearing or she could quit. The human resources director agreed to resign instead of being fired without a hearing with assurances of a neutral job reference. She interviewed and accepted a position with another school district. But then the charter school's Chief Executive Officer spoke to the other school district, and it withdrew the new employment. The director then advised the Board she did not wish to resign from the charter school. The Board proceeded anyway in later accepting the revoked resignation.  The director, based on these (and many more) alleged facts, now sues the charter school, its Chief Executive Officer, and Board members under federal and state law.

The charter school and its agents move to dismiss urging we apply a summary judgment standard. We decline to do so. We dismiss several claims. But proceed into discovery on a claim

for retaliation under the Pennsylvania Whistleblower Law, a First Amendment Retaliation claim against the Chief Executive Officer in his individual capacity for allegedly placing her on administrative leave and forcing her to submit her resignation, a First Amendment retaliation claim against Board Members in their individual capacities for approving her rescinded resignation, and a claim against the Chief Executive Officer for intentional interference with prospective contractual relations.

## I.  Alleged facts

Dr. Matthew Flannery serves as the Chief Executive Officer of 21st Century Cyber Charter School organized under the Pennsylvania Public School Code.[1] He supervised Lucinda Currie who worked for the Charter School for thirteen years including most recently as Director of Human Resources.[2]

### CEO Flannery seeks a salary increase for the 2022-2023 school year.

CEO Flannery submitted his salary increase to Director Currie for processing after the 2021–2022 school year.[3] The salary increase exceeded the maximum amount permitted by CEO Flannery's contract. Director Currie requested paperwork showing Board approval of the salary increase for audit purposes.[4] CEO Flannery became upset with Director Currie for requesting paperwork.[5] The Board subsequently approved the salary increase.

### CEO Flannery learns of Director Currie's earlier complaints.

CEO Flannery learned on an unpleaded date Director Currie provided information to the Board which led to the Board dismissing the Charter School's earlier chief executive officer.[6] CEO Flannery began supporting unwarranted allegations against Director Currie to undermine her credibility.[7]

### Director Currie shares employee complaints with CEO Flannery.

Director Currie conducted exit interviews for employees at an unpleaded time. Employees told Director Currie they did not trust school leadership at the Charter School.[8] Director Currie shared this information with CEO Flannery on an unpleaded date.[9] CEO Flannery "made it clear that he was not interested in these opinions."[10]

### Director Currie's performance warrants salary increase.

CEO Flannery submitted Director Currie's mid-year evaluation in March 2023. He marked Director Currie as "proficient" without constructive feedback or criticism.[11] The Board approved a significant salary increase for Director Currie in May 2023.[12]

### Director Currie warns CEO Flannery against hiring his nephew.

CEO Flannery circumvented the Charter School's hiring practices to secure a job for his nephew on an unpleaded date.[13] Director Currie cautioned CEO Flannery against giving his nephew special treatment as others might perceive it as nepotism.[14] CEO Flannery became hostile and dismissive toward Director Currie.[15]

### Director Currie and CEO Flannery meet on June 20, 2023.

CEO Flannery and Director Currie met on June 20, 2023.[16] CEO Flannery told Director Currie of hearing a former administrative assistant complained Director Currie made disparaging comments to her earlier in the month.[17] Director Currie denied the allegations. Director Currie had met with the administrative assistant to confirm her exit date before the administrative assistant left for a new job.[18] Director Currie claims she acted in a cordial manner to the administrative assistant.[19]

CEO Flannery told Director Currie of "rumblings" from the Board regarding negative feedback for Director Currie.[20] Director Currie did not believe the accusations as the Board never

provided her with negative feedback.[21] Director Currie asked CEO Flannery to provide more information on the "board rumblings."[22] CEO Flannery told Director Currie the Board would address its concerns with her in her end-of-year evaluation.[23]

### Attorney Scrivner interviews Director Currie on June 29, 2023.

The Charter School asked its lawyers to investigate the former administrative assistant's allegations against Director Currie.[24] CEO Flannery supported the investigation.[25] Attorney Ashley Scrivner interviewed Director Currie on June 29, 2023.[26] Director Currie told Attorney Scrivner about her concerns of waste and wrongdoing at the Charter School, including violations of policy and procedure, high numbers of failing students, attendance and truancy problems, and legal claims against the Charter School for failing to provide special education services to students.[27] Director Currie represented CEO Flannery circumvented the Charter School's hiring practices to secure a job for his nephew.[28]

Director Currie also told Attorney Scrivner about the Charter School's improper billing practices. Director Currie represented the Charter School overbilled school districts "thousands of dollars" for students who no longer resided in those school districts because they moved.[29] The Charter School billed a school district for at least one student who moved out of the Commonwealth.[30] The Charter School did not hold its employees accountable for obtaining proof of residency to support its billing practices.[31] Director Currie told Attorney Scrivner CEO Flannery did not consistently address this billing practice. The Charter School also improperly billed school districts for students who were chronically truant.[32]

Director Currie asked Attorney Scrivner to not share her representations with CEO Flannery because she feared his retaliation.[33]

### *CEO Flannery gives Director Currie a written directive.*

CEO Flannery gave Director Currie a written directive on the same day Director Currie met with Attorney Scrivner.[34] CEO Flannery told Director Currie she must direct her concerns about retaliation to his attention.[35] CEO Flannery forbade Director Currie from contacting a Pennsylvania Department of Education representative under threat of immediate termination.[36]

### *Attorney Scrivner and Director Currie meet in August 2023.*

Attorney Scrivner met with Director Currie on an unpleaded date in August 2023. Attorney Scrivner told Director Currie she shared Director Currie's concerns about waste and wrongdoing with CEO Flannery.[37] Attorney Scrivner and/or CEO Flannery shared Director Currie's concerns with the Board.[38] Attorney Scrivner asked Director Currie about other unfounded allegations made by unidentified individuals years earlier.[39] Director Currie realized CEO Flannery expanded the investigation of Director Currie to find allegations to support her termination.[40]

### *The Charter School places Director Currie on administrative leave.*

The Charter School placed Director Currie on paid administrative leave on August 3, 2023.[41]

### *The investigation lasts for two months.*

Board Policy requires investigations must be completed within ten school days of the written complaint.[42] The investigation lasted for two months.[43] Director Currie asked Attorney Scrivner to identify the policy violations which warranted an extended investigation. Attorney Scrivner responded the Charter School did not establish specific policy violations.[44] Director Currie asked CEO Flannery what remedy the administrative assistant sought for the allegations she made against Director Currie.[45] CEO Flannery did not answer.

### *Director Currie agrees to resign.*

The Charter School offered Director Currie the choice between resignation and termination.[46] Director Currie learned CEO Flannery planned to recommend her termination to the Board without a Board hearing even though she had requested one.[47] The Charter School did not notify Director Currie of its intent to terminate her employment or offer a reason for the termination.[48] The Charter School did not inform Director Currie of her right to appeal a termination decision under Board policy.[49] The Charter School told Director Currie it would provide a neutral job reference if she resigned.[50]

Director Currie submitted her resignation effective August 21, 2023 because she did not want to tarnish her "outstanding work record."[51] The Charter School stopped paying Director Currie on August 21, 2023.[52] The Board listed Director Currie's resignation for acceptance on the Board agenda for its regular meeting on September 12, 2023.[53]

### *Octorara School District extends and then rescinds job offer to Director Currie.*

Director Currie applied for the supervisor of human resources role at Octorara Area School District on an unidentified date before her resignation on August 21, 2023.[54] Director Currie interviewed for the position on an unpleaded date. Octorara School District offered her a position on August 25, 2023.[55] Director Currie accepted the job offer on an unpleaded date.

The Octorara Superintendent Dr. Steven Leever contacted Director Currie and asked her to meet to discuss negative information CEO Flannery provided him about Director Currie on September 6, 2023.[56] Director Currie met with Superintendent Leever the same day to explain the circumstances of her departure from the Charter School. Superintendent Leever told Director Currie CEO Flannery provided him information but did not divulge the contents.[57] Octorara School District rescinded its job offer to Director Currie the next day.

### *Director Currie rescinds her resignation.*

Director Currie emailed Charter School Board Chairwoman Andrea Fox rescinding her resignation on September 11, 2023—one day before the Board meeting to formally accept Director Currie's resignation.[58] Director Currie copied the other Board Members on the email. Director Currie provided the Board with a formal complaint detailing her allegations of waste and wrongdoing. Director Currie also detailed how CEO Flannery created a "toxic atmosphere" by making disparaging statements about students and staff.[59] Director Currie requested the Board hire an independent investigator to investigate the allegations.[60] Director Currie asked for a Board hearing if the Board intended to terminate her employment.

### *The Board meets on September 12, 2023.*

The Board met the next day for its regular meeting on September 12, 2023. The Board voted unanimously to approve all personnel actions on its agenda, including Director Currie's resignation.[61] At approximately 7:43 p.m. on the day of the Board meeting, Chairwoman Fox emailed Director Currie acknowledging receipt of her email from the day before with the attached complaint form.[62] Chairwoman Fox informed Director Currie the Board would "look into" the matter and "be in touch soon."[63]

The Board did not take action to undo its acceptance of her rescinded resignation or offer Director Currie a Board hearing.[64]

## II.   Analysis

Director Currie sued the Charter School, CEO Flannery, Board Chairwoman Fox, and Board Members Burnett, Orner, Andes, and Strohmayr, for violating the Pennsylvania Whistleblower Law, First Amendment retaliation, and procedural due process. Director Currie sued the Charter School and CEO Flannery for violating her right to substantive due process and intentional interference with prospective contractual relations.

The Charter School and its agents move to dismiss Director Currie's amended Complaint.[65] They argue: (1) her Pennsylvania Whistleblower Law claim is barred by the statute of limitations, (2) she does not plead the state actors' personal involvement to support her constitutional claims, (3) she does not allege an adverse action to support her First Amendment retaliation claim, (4) she does not identify a protected interest under the Due Process Clause, (5) her substantive due process claim fails because she does not identify the nature of the information CEO Flannery shared with Octorara Superintendent Leever, and (6) they are immune from liability for intentional torts and Director Currie does not state a claim for intentional interference with prospective contractual relations. They also move for a more definite statement as to Director Currie's substantive due process allegations.

We agree with the Charter School and its agents in part. Director Currie states a claim for retaliation under the Pennsylvania Whistleblower Law. Director Currie states a First Amendment Retaliation claim against CEO Flannery and the Board Members in their individual capacities. Director Currie states a claim against CEO Flannery for intentional interference with prospective contractual relations. We dismiss Director Currie's official capacity claims against CEO Flannery and the Board Members with prejudice. We dismiss without prejudice Director Currie's First Amendment retaliation claim against CEO Flannery based on the Board action on September 12, 2023. We dismiss without prejudice Director Currie's First Amendment retaliation claim against the Board based on Director Currie's administrative leave and forced resignation. We dismiss Director Currie's procedural and substantive due process claims without prejudice. We see no basis for a more definite statement. We dismiss Director Currie's intentional tort claim against the Charter School with prejudice.

## A.   We decline to review the arguments on a summary judgment standard.

Charter School Defendants attach over eighty pages of documents to their Motion to dismiss. They rely on these extraneous documents. We typically ignore the matters presented outside of the pleadings in studying whether Director Currie pleads a claim. We decline to convert Charter School Defendants' Motion to dismiss into a motion for summary judgment.

The Supreme Court through Rule 12(d) permits us to convert a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment under Rule 56.[66] We have "discretion to either convert the motion to dismiss into a motion for summary judgment, or to ignore the matters presented outside the pleadings and continue to treat the filing as a motion to dismiss."[67] We decline to treat the Charter School Defendants' motion to dismiss as a motion for summary judgment because the briefing to date confirms disputed issues and discovery will allow a more thoughtful analysis of a claim with serious allegations and lasting effects upon the parties, students, and the local educational community.[68]

We consider the Charter School Defendants' motion under Rule 12(b)(6) and ignore the documents the Charter School Defendants attached to their motion.

## B.   Director Currie states a claim for retaliation under the Pennsylvania Whistleblower Law.

Charter School Defendants move to dismiss Director Currie's Pennsylvania Whistleblower Law claim as barred by the statute of limitations. We disagree. Director Currie's allegations survive a motion to dismiss based on a statute of limitations defense.

### 1.   The statute of limitations does not bar Director Currie's whistleblower claim based on her forced resignation.

Under the Pennsylvania Whistleblower Law, employers may not "discharge, threaten or otherwise discriminate or retaliate against an employee" with respect to the terms of her employment because the employee reported in good faith "an instance of wrongdoing or waste

by a public body."[69] Persons suing under the Law must bring a civil action "within 180 days after the occurrence of the alleged violation."[70] The time limit is "mandatory, and courts have no discretion to extend it."[71] We may dismiss Director Currie's claim based on a statute of limitations defense "only when such a defense is apparent on the face of the complaint."[72]

Director Currie argues the Charter School Defendants retaliated against her for reporting waste and wrongdoing by subjecting her to a baseless disciplinary investigation, addressing her in a hostile manner, prohibiting her from contacting the Department of Education, placing her on paid administrative leave, forcing her to resign, and terminating her by accepting her resignation after she rescinded it.[73]

Charter School Defendants argue her claims are outside the 180-day statute of limitations because (1) the Charter School placed her on administrative leave 201 days before she filed her Complaint on February 20, 2024; (2) Director Currie resigned August 21, 2023—183 days before she filed her Complaint; and (3) Director Currie's letter to the Board on September 11, 2023 does not allow her to bring a post-separation claim under the Pennsylvania Whistleblower Law. Director Currie counters we cannot decide the statute of limitations argument on a motion to dismiss because there is a fact dispute over whether and when the Charter School accepted her resignation.

We must first determine whether any of the alleged violations occurred within the 180-day statute of limitations period. We cannot discern from the pleadings whether Director Currie's employment ended effective August 21, 2023—when she submitted her resignation to the Charter School and the Charter School stopped paying her—or on September 12, 2023, when the Board accepted her resignation. If Director Currie's employment ended effective August 21, 2023, her Pennsylvania Whistleblower Law claim may be barred by the statute of limitations

because the violation occurred 183 days before she filed the Complaint. If her employment ended effective September 12, 2023, she brought her claim within the statute of limitations when she filed her Complaint 161 days later. Director Currie plausibly alleges a violation occurred within the statute of limitations period when the Board accepted her resignation at the Board meeting on September 12, 2023.  The statute of limitations defense is not apparent from the face of the amended Complaint.

The Charter School Defendants argue the claim is barred if we "find that Currie resigned and the School accepted the resignation irrevocably."[74] But we do not "find" anything at the motion to dismiss stage. Key questions regarding the nature of Director Currie's termination, including whether she resigned voluntarily, resigned involuntarily, or the Board fired her, are questions of fact we cannot resolve before discovery. We will resolve these questions, if necessary, on a summary judgment record.

We deny Charter School Defendants' motion to dismiss Director Currie's whistleblower claim based on a statute of limitations defense.

> **2.  Director Currie's whistleblower claims based on conduct outside of the statute of limitations are not barred as untimely because Director Currie pleads a continuing pattern of violations.**

Director Currie argues she can bring her Pennsylvania Whistleblower Law claims based on other retaliatory acts outside of the statute of limitations under the continuing violations doctrine.  The Charter School Defendants argue the continuing violations doctrine does not apply because Director Currie does not allege violations within the statute of limitations period. We already held Director Currie plausibly alleges a timely violation occurred when the Board accepted her resignation on September 12, 2024. We do not dismiss Director Currie's remaining whistleblower claims based on conduct outside of the statute of limitations because Director

Currie's allegations are sufficient at this stage to invoke the continuing violations doctrine.

The statutory period begins 180 days before she filed her Complaint on February 20, 2024—on August 24, 2023. Alleged whistleblower violations before August 24, 2023 are outside of the statutory period, including Director Currie's written directive, paid administrative leave, disciplinary investigation, and forced resignation. Director Currie can base her whistleblower claim on violations outside of the statutory period only if we find the conduct is part of a continuing practice.

"Under the 'continuing violation' theory, a plaintiff may bring suit based in part on events that would otherwise be time-barred, so long as the plaintiff can 'show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period.'"[75] "[C]ourts should consider at least three factors: (1) subject matter—whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency—whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence—whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate."[76]

The Charter School Defendants concede our colleagues apply the continuing violations doctrine under the Whistleblower Law.[77] Director Currie alleges enough at this stage to survive a statute of limitations challenge.

We are guided by Judge Baylson's reasoning in *Orkin v. Philadelphia Police Department*.[78] Police Officer Orkin sued the Police Department for whistleblower retaliation. Officer Orkin complained to other officers about an unsafe work environment.[79] Another officer

informed Officer Orkin he had to sit in the basement without a work assignment shortly after he complained. The Department then transferred Officer Orkin to a different police district with four disabled officers.[80] City argued Officer Orkin's claim is barred by the statute of limitations because the transfer occurred over 180 days before Officer Orkin filed his Complaint. Officer Orkin argued the continuing violations doctrine applies because the transfer is part of an ongoing pattern of retaliation and the effects appear to be permanent. Judge Baylson agreed. He reasoned, "[t]his kind of retaliation (assuming it is retaliation) is ongoing, has continued be in effect as of the filing of the Complaint, and appears to be permanent."[81]

Director Currie also pleads a consistent pattern of retaliatory acts. The alleged retaliatory acts occurred over the three-month period from June 2023 to September 2023. Director Currie asked for paperwork to support CEO Flannery's salary increase. CEO Flannery then started an investigation into Director Currie based on allegedly minor allegations. Director Currie shared her complaints about the School's waste and wrongdoing with Attorney Scrivner on June 29, 2023. Her complaints concerned, among other things, the School's improper billing and financial practices. CEO Flannery gave Director Currie a written directive on the same day Director Currie met with Attorney Scrivner. Attorney Scrivner shared her same complaints with CEO Flannery. After Attorney Scrivner shared the complaints with CEO Flannery, the School placed Director Currie on paid administrative leave. Director Currie resigned to avoid termination without a hearing. Director Currie complained again—about the same subject matter including financial wrongdoing—to the Board on September 11, 2023.   The Board approved her resignation the next day. The actions taken by CEO Flannery and the Board do not appear to be isolated incidents. They are part of a continuing pattern of conduct involving Director Currie's reports of wrongdoing to individuals who subjected her to increasingly adverse treatment.

Director Currie's allegations are sufficient at this stage to survive a motion to dismiss based on a statute of limitations defense. A statute of limitations defense is not apparent on the face of the amended Complaint. We deny the Charter School Defendants' motion to dismiss Director Currie's Pennsylvania Whistleblower Law claim.

**C.     We dismiss Director Currie's official capacity claims.**

We review Director Currie's First and Fourteenth Amendment claims mindful Congress, under section 1983, allows persons to seek relief for constitutional claims in federal court.[82] "To state a claim under [section] 1983, [Director Currie] must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[83] Charter Schools and Board Members are state actors under section 1983.[84]

Director Currie sues the Charter School Defendants in their individual and official capacities. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."[85] Official capacity suits against charter school Board Members are suits against the Charter School.[86] Director Currie already sues the Charter School. We dismiss her official capacity claims against Board Members and CEO Flannery as redundant.[87]

**D.     Director Currie states a First Amendment retaliation claim against CEO Flannery and the Board Members in their individual capacities.**

Director Currie sues the Charter School Defendants under the First Amendment alleging they retaliated against her for reporting the Charter School's waste and wrongdoing. She alleges the Charter School and CEO Flannery retaliated against her by (1) forcing her to submit her resignation, (2) placing her on administrative leave, and (3) terminating her employment on August 21, 2023. Director Currie states a First Amendment retaliation claim against CEO

14

Flannery for allegedly placing her on administrative leave and forcing her to submit her resignation and against the Board Members for approving her rescinded resignation on September 12, 2023.

> **1.  Director Currie pleads CEO Flannery's personal involvement in her paid administrative leave and forced resignation and the Board's personal involvement in accepting her rescinded resignation.**

We consider Direct Currie's claims against the Charter School Defendants in their individual capacities. We cannot find Section 1983 liability based "solely on the operation of respondeat superior."[88] "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.[89] "[P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."[90]

Director Currie sues the Charter School Defendants under the First Amendment alleging they retaliated against her by forcing her to submit her resignation, placing her on administrative leave, and terminating her employment by accepting her resignation on September 12, 2023.[91] Charter School Defendants argue (1) Director Currie does not plead a Board Member's personal involvement in placing her on paid administrative leave or coercing her resignation, and (2) Director Currie does not allege CEO Flannery or the Board knew about Director Currie's email complaint on September 11, 2023 and thus does not plead their personal involvement in the Board action on September 12, 2023. Director Currie counters she pleads personal involvement based on allegations she shared her concerns of wrongdoing, CEO Flannery and the Board members learned of the allegations, and CEO Flannery and the Board took action to terminate her employment.

Director Currie sufficiently pleads CEO Flannery's personal involvement in placing her on administrative leave and forcing her to resign. Director Currie alleges CEO Flannery knew about Director Currie's complaints because Director Currie complained directly to CEO

Flannery and Attorney Scrivner shared Director Currie's complaints with CEO Flannery. She alleges the Charter School placed her on administrative leave based on an investigation driven in large part by CEO Flannery's support of unwarranted allegations against Director Currie. She alleges CEO Flannery "coerced" her into resigning after she learned he planned to recommend her termination to the Board without a Board hearing.[92]

Director Currie does not plead the Board's personal involvement in placing her on administrative leave or forcing her to resign. Director Currie alleges only "[The Charter School] and [CEO] Flannery forced [her] to resign."[93] She does not make other allegations as to the Board's involvement in her leave or resignation.

Director Currie pleads the Board's personal involvement in the Board action on September 12, 2023. She alleges she sent an email rescinding her resignation and complaining about waste and wrongdoing to Chairwoman Fox with copies to Board Members Burnett, Orner, Strohmayer, Andes, and McConnell on September 11, 2023. Director Currie alleges these same Board Members voted unanimously to approve Director Currie's resignation the next day. Director Currie's allegations may proceed at this preliminary stage.

Director Currie does not plead CEO Flannery's involvement in the Board action on September 12, 2023. Director Currie pleads she emailed a letter and a complaint to the Board on September 11, 2023 but she does not allege she copied CEO Flannery. Director Currie alleges on September 12, 2023 the Board Members (not CEO Flannery) voted to approve her resignation. Director Currie does not plead CEO Flannery personally directed the Board to vote a certain way or knew about her attempted resignation revocation.

Director Currie argues CEO Flannery had a role in the Board's action on September 12, 2023 because "the Board's actions on September 12, 2023, as well as [CEO] Flannery's prior

actions against Ms. Currie were all pieces of a pattern of ongoing retaliation that constitute continuing violations by [Charter School]."[94] Director Currie confuses the continuing violations doctrine with personal involvement under section 1983. Director Currie must allege CEO Flannery's personal involvement with respect to *each* alleged violation. Her allegations of a "pattern of ongoing retaliation" do not suffice to show CEO Flannery's involvement in the Board action on September 12, 2023.

Director Currie pleads CEO Flannery's personal involvement in allegedly placing her on administrative leave and forcing her to submit her resignation and the Board's personal involvement in accepting Director Currie's forced resignation thereby allegedly terminating her on September 12, 2023. We dismiss without prejudice Director Currie's First Amendment retaliation claim against CEO Flannery based on the Board action on September 12, 2023 for failure to plead personal involvement. We dismiss without prejudice Director Currie's First Amendment retaliation claim against the Board based on Director Currie's administrative leave and forced resignation for failure to plead personal involvement.

### 2.    Director Currie states a First Amendment retaliation claim.

The First Amendment protects individuals from retaliatory actions for engaging in protected speech.[95] Director Currie must allege: (1) she engaged in constitutionally protected conduct; (2) she suffered an adverse action sufficient to deter a person of ordinary firmness from exercising her constitutional rights; and (3) a causal link between the exercise of her constitutional rights and the adverse action taken against her.[96]

Director Currie engaged in constitutionally protected conduct when she complained to Attorney Scrivner and the Board about waste and wrongdoing at the Charter School. She complained about improper billing practices, violations of policy and procedure, high numbers of

failing students, attendance and truancy problems, and legal claims against the Charter School for failing to provide special education services to students.

The Charter School Defendants contend Director Currie's retaliation claims fail because she does not specifically allege "the claimed wrongdoing, including but not limited to the laws, statutes, regulations, rules of ethics/conduct and/or other written policies she contends were violated."[97] The Charter School Defendants offer no support for this argument. Their claim is incorrect. Director Currie specifically alleged: "[CEO] Flannery circumvented [Charter School's] established hiring practices to secure a job for his nephew"; "[Charter School] had been billing school districts for students who had moved and were no longer residents in those school districts"; "school districts were being improperly billed for some students who were chronically truant"; and "[Charter School] had been facing legal action . . . for not providing certain students with special education services as required by law."[98] Director Currie pleads the claimed wrongdoing.

Charter School Defendants also argue Director Currie does not plead the second element—adverse action.  An "adverse action" is one which would "deter a person of ordinary firmness" from exercising her First Amendment rights.[99] "This requirement is not too demanding."[100] The adverse action must amount to more than a trivial inconvenience.[101]

The Charter School Defendants argue Director Currie did not suffer adverse action because she did not lose wages while on paid administrative leave and she voluntarily submitted her resignation. Director Currie does not need to prove monetary loss to plead an adverse action. An investigation into baseless allegations and placement on paid leave is more than a trivial inconvenience. Charter School Defendants rely on extraneous documents to support their argument Director Currie resigned voluntarily. But we today consider the allegations in the

amended Complaint. Director Currie does not allege she resigned voluntarily. She alleges she had to resign or face CEO Flannery's termination recommendation to the Board without a hearing. Allegations of forced resignation are sufficient to satisfy the second element of a First Amendment retaliation claim.[102]  We cannot decide whether she acted voluntarily at this stage.

Director Curries pleads causation if she "pleads that her 'constitutionally protected conduct was a substantial or motivating factor' for the retaliatory conduct."[103] "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."[104]

The Charter School Defendants argue Director Currie's retaliation claim fails because she does not allege the Board knew about her complaints. Director Currie need not plead actual knowledge. She pleads an unusually suggestive temporal proximity between her complaint to the Board on September 11, 2023, and the alleged retaliation on September 12, 2023.

Director Currie states a First Amendment retaliation claim against CEO Flannery for his role in placing her on paid administrative leave and allegedly forcing her to submit her resignation, and against the Board Members for their action on September 12, 2023.

### E.    Director Currie does not state a procedural due process claim.

Director Currie claims the Charter School Defendants violated her procedural due process rights by not following Board policy in terminating her employment. The Charter School Defendants argue her claim fails because she does not allege a right to continued employment. Director Currie does not state procedural due process claim.

"To state a claim under [section] 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) [s]he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the

procedures available to h[er] did not provide 'due process of law.'"[105] "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."[106]

Director Currie pleads Board Policy "created a due process right requiring that employees be given a Board hearing if requested" after a CEO recommends the employee's termination to the Board.[107] Director Currie alleges the Charter School Defendants deprived her of a property interest by terminating her employment without a hearing in violation of Board policy. Director Currie must establish she has a property right to continued employment to sustain her due process claim.

"To have a property interest in a job, 'a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment.'"[108] "A person can have a property interest in a government job if [s]he has a legitimate entitlement to it, not just a unilateral expectation of continued employment."[109] "Under Pennsylvania law, protected property interests arise in three ways: First, through legislative action or authorization; Second, through a contract that grants the plaintiff protected status, such as employment tenure or welfare benefits; Third, through an employment contract permitting dismissal only for cause."[110]

Director Currie relies on Board Policy as the source of her alleged property interest. But Board Policy is not state law. Board Policy is not an employment contract or a contract granting Director Currie protected status. Deviation from Board Policy does not deprive Director Currie of due process.

Director Currie does not identify a basis for her alleged property interest. We dismiss her procedural due process claim without prejudice.

**F.      Director Currie does not state a substantive due process claim.**

Director Currie alleges the Charter School and CEO Flannery deprived her of a liberty interest in her reputation by providing information to her potential employer which portrayed Director Currie in a false light and prevented her from gaining a specific job. The Charter School and CEO Dr. Flannery argue Director Currie's claim fails because she does not identify the allegedly defamatory information CEO Flannery told Superintendent Leever. Director Currie does not state a substantive due process claim because reputational harm is outside the scope of substantive due process protection.  Director Currie does not state a procedural due process claim based on reputational harm because she does not identify the content of CEO Flannery's statements.

 "Substantive due process is a component of the Fourteenth Amendment that protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them."[111] "[T]o prevail on a substantive due process claim, 'a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience.'"[112] "[N]ot all property interests worthy of procedural due process protection are protected by the concept of substantive due process."[113] "The interest must be 'fundamental' under the Constitution."[114]

Director Currie does not plead a fundamental interest in support of her substantive due process claim. "Mere defamation or harm to reputation is [] outside the scope of substantive due process protection."[115] We dismiss Director Currie's claim for reputational injury under the substantive due process clause.

Reputational injury is protected under procedural, rather than substantive, due process.[116] To plead a due process claim for deprivation of a liberty interest in her reputation, Director Currie "must show a stigma to h[er] reputation *plus* deprivation of some additional right or

interest."[117] "In the public employment context, the 'stigma-plus' test has been applied to mean that when an employee creates and disseminates a false and defamatory impression about the employee in connection with her termination, it deprives the employee of a protected liberty interest."[118] "The creation and dissemination of a false and defamatory impression is the 'stigma', and the termination is the 'plus.'"[119] "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."[120]

Director Currie alleges CEO Flannery "portrayed [her] in a false light" in connection with her termination and efforts to gain employment at Octorara.[121] Although Director Currie alleges CEO Flannery provided negative information about her to Superintendent Leever (Octorara), she does not identify what he said. Director Currie instead alleges "[Superintendent] Leever stated that he had received information regarding [Director] Currie from [CEO] Flannery, *but he did not divulge what [CEO] Flannery had said*."[122] We cannot know whether the information created a "false and defamatory impression" without knowing the content of the information.[123]

We dismiss Director Currie's substantive due process claims without prejudice.

### G.     We find no need for a more definite statement.

The Charter School Defendants move for a more definite statement on what CEO Flannery said to Superintendent Leever.  We deny their motion for a more definite statement mindful we dismissed the due process claim without prejudice as Director Currie should be able to evaluate the communications in fulsome discovery.

A "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare

a response."[124] "Motions under Rule 12(e) are 'appropriate when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to itself.'"[125] "Motions for a more definitive statement are generally disfavored, and are used to provide remedies for unintelligible pleadings rather than as correction for lack of detail."[126]

Charter School Defendants do not argue Director Currie's complaint is unintelligible. Charter School Defendants argue it lacks sufficient detail as to what CEO Flannery said to Superintendent Leever which was defamatory or placed her in a false light.  We do not find Director Currie's allegations are "so vague or ambiguous" the Charter School Defendants "cannot reasonably prepare a response."[127] We deny Charter School Defendants' motion for a more definite statement.

### H.    Director Currie states a claim for intentional interference with prospective contractual relations against CEO Flannery.

Director Currie sues the Charter School and CEO Flannery for interfering with her prospective employment relationship with the Octorara School District. The School and CEO Flannery argue they are immune under the Pennsylvania Political Subdivision Tort Claims Act. Director Currie states a claim for intentional interference with prospective contractual relations against CEO Flannery. But the Charter School is immune from this claim.

The Pennsylvania Charter School Law "provides that charter schools may sue and be sued to the same extent that political subdivisions can be sued."[128] The Pennsylvania General Assembly through the Pennsylvania Political Subdivision Tort Claims Act provides "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."[129] But an employee

is not shielded from liability where his conduct constituted a "crime, actual fraud, actual malice or willful misconduct."[130]

Director Currie concedes the Charter School is immune under the Act but argues CEO Flannery is not immune because he engaged in willful misconduct. Director Currie alleges CEO Flannery "provided negative information about [Director] Currie specifically intended to prevent the prospective relation from occurring."[131] Director Currie also alleges CEO Flannery provided negative information "out of malice toward her."[132] Director Currie's claim for intentional interference with prospective contractual relations is a claim of willful misconduct. CEO Flannery is not immune from liability for willful misconduct under the presently pleaded facts.[133]

CEO Flannery argues he is entitled to absolute immunity as a high public official.  "In Pennsylvania, high public official immunity is a long-standing category of common law immunity that acts as an absolute bar to protect high public officials from lawsuits arising out of actions taken in the course of their official duties and within the scope of their authority."[134] "[A] defendant can succeed in claiming immunity from suit at the motion to dismiss phase 'so long as there are sufficient facts for the court to complete the requisite analysis.'"[135] "Dismissal on the basis of immunity is not appropriate on a motion to dismiss when immunity is not established on the face of the Complaint."[136]

The parties dispute whether CEO Flannery is a high public official. We need not decide this question.  Even if we agree with CEO Flannery he is a high public official, we must also find he acted within the scope of his duties when he shared information with Superintendent Leever to find him immune. We cannot discern this information from the face of the Complaint. Dismissal based on immunity is not appropriate at this stage.

CEO Flannery argues Director Currie's intentional interference claim must also be dismissed because her allegations are speculative and conclusory. "In order to establish a claim for intentional interference with prospective contractual relations, a plaintiff must prove the following: (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct."[137]

Director Currie plausibly pleads each of these elements.  Director Currie alleges she had prospective contractual relationship with Octorara District because she accepted a position there. She alleges CEO Flannery purposely told Octorara Superintendent Leever negative information about Director Currie even though the Charter School agreed to provide a neutral job reference for Director Currie if she resigned.  Director Currie and Superintendent Leever met to discuss the circumstances of her departure from the Charter School.  Superintendent Leever rescinded the job offer the following day.

Director Currie's intentional tort claim is not barred by the Act because she plausibly alleges CEO Flannery engaged in willful misconduct.  We cannot determine whether CEO Flannery is entitled to high public official immunity based on the allegations in the Complaint. Director Currie states a claim for intentional interference with prospective contractual relations against CEO Flannery.

## III.   Conclusion

We dismiss Director Currie's official capacity claims against CEO Flannery and the Board Members with prejudice as redundant of her claims against the Charter School. We

dismiss without prejudice Director Currie's First Amendment retaliation claim against CEO Flannery based on the Board action on September 12, 2023 for failure to plead personal involvement.  We dismiss without prejudice Director Currie's First Amendment retaliation claim against the Board based on Director Currie's administrative leave and forced resignation for failure to plead personal involvement.  We dismiss Director Currie's procedural and substantive due process claims without prejudice. We deny Charter School Defendants' Motion for a more definite statement. We dismiss Director Currie's intentional tort claim against the Charter School with prejudice as it is immune under the Tort Claims Act.

Director Currie states a claim for retaliation under the Pennsylvania Whistleblower Law. Director Currie states a First Amendment Retaliation claim against CEO Flannery in his individual capacity for allegedly placing her on administrative leave and forcing her to submit her resignation. Director Currie states a First Amendment retaliation claim against the Board Members in their individual capacities for approving her rescinded resignation. Director Currie states a claim against CEO Flannery for intentional interference with prospective contractual relations.

---

[1] ECF No. 6 ¶ 2, 3.

[2] *Id.* ¶ 5. The Board promoted Director Currie to an Administrator in January 2022. *Id.* ¶ 12.

[3] *Id.* ¶ 7.

[4] *Id.* Andrea Fox, Mollie Burnett, Michele Orner, Veronica Andes, and Denise Strohmayer served on the Charter School's Board of Trustees. *Id.* ¶ 4.

[5] *Id.* ¶ 7.

[6] *Id.* ¶ 8.

[7] *Id.*

[8] *Id.* ¶ 9.

[9] *Id.*

[10] *Id.*

[11] *Id.* ¶ 12.

[12] *Id.*

[13] *Id.* ¶ 15.

[14] *Id.*

[15] *Id.*

[16] *Id.* ¶ 10.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* ¶ 11.

[21] *Id.*

[22] *Id.* ¶ 12.

[23] *Id.*

[24] *Id.* ¶ 13.

[25] *Id.* ¶ 15.

[26] *Id.* ¶ 13.

[27] *Id.* ¶ 14.

[28] *Id.* ¶ 15.

[29] *Id.* ¶ 16.

[30] *Id.*

[31] *Id.*

[32] *Id.* ¶ 17.

[33] *Id.* ¶ 19.

[34] *Id.* ¶ 18.

[35] *Id.*

[36] *Id.*

[37] *Id.* ¶ 19.

[38] *Id.*

[39] *Id.* ¶ 20.

[40] *Id.*

[41] *Id.* ¶ 21.

[42] *Id.* ¶ 22.

[43] *Id.*

[44] *Id.*

[45] *Id.* ¶ 36.

[46] *Id.* ¶ 23.

[47] *Id.* ¶ 24.

[48] *Id.* ¶ 36.

[49] *Id.*

[50] *Id.* ¶ 30.

[51] *Id.* ¶ 25.

[52] *Id.* ¶ 26.

---

[53] *Id.* ¶ 31.

[54] *Id.* ¶ 28.

[55] *Id.*

[56] *Id.* ¶ 29.

[57] *Id.*

[58] *Id.* ¶ 32.

[59] *Id.* ¶ 33.

[60] *Id.* ¶ 32.

[61] *Id.* ¶ 34. Director Currie claims "Because Currie had rescinded her resignation, the Board should have utilized the procedure set out in Board Policy 0001, Article X if it wanted to proceed with her termination. However, that was not done." *Id.* ¶ 35.

[62] *Id.* ¶ 38. Chairwoman Fox copied other Board members.

[63] *Id.*

[64] *Id.* ¶¶ 39–40.

[65] A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare

recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[66] Fed. R. Civ. P. 12(d).

[67] *Escalera v. Harry*, No. 15-2132, 2016 WL 6694502, at *7 (M.D. Pa. Sept. 28, 2016), *report and recommendation adopted*, No. 15-2132, 2016 WL 6582065 (M.D. Pa. Nov. 7, 2016) (citation and quotations omitted).

[68] *See Malik v. Am. Bankers Ins. Co. of Fla.*, No. 23-16240, 2024 WL 1635687, at *1 (D.N.J. Apr. 16, 2024) ("The Court declines to exercise its discretion to treat this motion as one for summary judgment and will address the pending motion as a motion to dismiss because the parties have not been afforded the opportunity for discovery.").

[69] 43 PA. STAT. ANN. § 1423.

[70] *Id.* § 1424(a).

[71] *O'Rourke v. Pa. Dep't of Corr.*, 730 A.2d 1039, 1042 (Pa. Commw. Ct. 1999).

[72] *Coe v. Brullo*, No. 22-2536, 2023 WL 2182374, at *2 (3d Cir. Feb. 23, 2023).

[73] ECF No. 1 ¶¶ 8, 11, 18, 21, 25, 32–34.

[74] ECF No. 10-1 at 6.

[75] *Kamel v. Sanofi Pasteur*, No. 14-1658, 2015 WL 926427, at *9 (M.D. Pa. Mar. 4, 2015) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165–66 (3d Cir. 2013)).

[76] *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001).

[77] ECF No. 10-1 at 6 ("Although Courts have recognized the tolling of the SOL under the PWL for 'continuing conduct' and granting relief for earlier events in the limitations period…").

[78] *Orkin v. Philadelphia Police Dep't*, No. 22-511, 2023 WL 1971253 (E.D. Pa. Feb. 13, 2023).

[79] *Id.* at *1.

[80] *Id.*

[81] *Id.* at *4.

[82] Congress provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

> 42 U.S.C. § 1983.

[83] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[84] *Pocono Mt. Charter Sch. v. Pocono Mt. Sch. Dist.*, 908 F. Supp. 2d 597, 604 (M.D. Pa. 2012) ("Applying *Monell* and its progeny, district courts in the Third Circuit have found charter schools amenable to suit under § 1983.").

[85] *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted).

[86] *Moorehead v. Sch. Dist. of City of Allentown*, No. 22-3959, 2023 WL 2976556, at *13 (E.D. Pa. Apr. 17, 2023) (quoting *Donovan v. Pittston Area Sch. Dist.*, No. 14-1657, 2015 WL 3771420, at *5 (M.D. Pa. June 17, 2015)).

[87] *See Wynkoop v. Avonworth Sch. Dist.*, No. 22-814, 2023 U.S. Dist. LEXIS 136860, at *21–22 (W.D. Pa. Aug. 7, 2023).

Director Currie argues we should not dismiss her claims against Board Members because she may bring a Section 1983 claim against Board Members in their official capacities as she seeks "prospective injunctive relief." ECF No. 11 at 10. Director Currie only seeks injunctive relief for her procedural due process claim. She requests a Board Hearing. We dismiss Director Currie's procedural due process claim for reasons below. Director Currie's request for injunctive relief based on this dismissed claim also fails.

[88] *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

[89] *Rode*, 845 F.2d at 1207; *see Dooley v. Wetzel*, 957 F.3d 366, 374 ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'")

(quoting *Rode*, 845 F.2d at 1207)); *see also Iqbal*, 556 U.S. at 676 (explaining "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

[90] *Rode*, 845 F.2d at 1207.

[91] ECF No. 6 ¶¶ 52–54. Director Currie also alleges in a conclusory fashion the Charter School Defendants subjected her to adverse action "when her administrative leave became unpaid on August 21, 2023." *Id.* ¶ 53. She does not make any other allegations related to her alleged unpaid administrative leave. Director Currie submitted her resignation effective August 21, 2023. We read Director Currie as again asserting a retaliation claim based on her resignation rather than any claim based on unpaid administrative leave.

[92] *Id.* ¶ 25.

[93] *Id.* ¶ 27.

[94] ECF No. 11 at 7.

[95] *Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019).

[96] *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

[97] ECF No. 10-1 at 10.

[98] ECF No. 6 at ¶¶ 15–17.

[99] *Newmones v. Ransom*, No. 21-276, 2022 WL 4536296, at *5 (W.D. Pa. Sept. 28, 2022) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).

[100] *Id.*

[101] *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000) (citing *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).

[102] *See, e.g., Donovan v. Pittston Area Sch. Dist.*, No. 23-278, 2023 WL 6465416, at *5 (M.D. Pa. Sept. 30, 2023) (denying motion to dismiss based on allegations plaintiff given choice to resign or face criminal prosecution because "[t]his alleged 'constructive discharge,' is sufficient to plead an adverse action under the second First Amendment retaliation element."); *Fotopolous v. Bd. of Fire Comm'rs of the Hicksville Fire Dist.*, 11 F. Supp. 3d 348, 366 (E.D.N.Y. 2014) ("Plaintiff's claim that he was coerced to resign can be considered a claim of constructive discharge, and therefore satisfies the adverse action requirement for Plaintiff's First Amendment retaliation claim.").

[103] *Conard v. Pa. State Police*, 902 F.3d 178, 184 (3d Cir. 2018) (citation omitted).

[104] *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[105] *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (citation omitted).

[106] *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972).

[107] ECF No. 6 ¶ 60.

[108] *Foster v. Crestwood Sch. Dist.*, No. 16-1096, 2017 WL 1078195, at *7 (M.D. Pa. Mar. 22, 2017) (citing *Hill*, 455 F.3d at 234).

[109] *Kohn v. Sch. Dist.*, 817 F. Supp. 2d 487, 505 (M.D. Pa. 2011).

[110] *Afrika v. Khepera Charter Sch.*, No. 16-5298, 2017 WL 1042075, at *4 (E.D. Pa. Mar. 16, 2017) (citation and quotations omitted).

[111] *Nekrilov v. City of Jersey City*, 45 F.4th 662, 680 (3d Cir. 2022) (citations and quotations omitted) (cleaned up).

[112] *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 190 (3d Cir. 2009) (citation omitted).

[113] *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000) (citation and quotations omitted).

[114] *Barnett v. Penn Hills Sch. Dist.*, 705 F. App'x 71, 74 (3d Cir. 2017) (citation omitted).

[115] *Ostrowski v. D'Andrea*, No. 14-429, 2015 WL 10434888, at *5 (M.D. Pa. Aug. 11, 2015); *see Hill*, 455 F.3d at 234 n.12 (reasoning plaintiff's claim fails because reputational injury is not enough to support substantive due process claim).

[116] *See Smith v. Engler*, No. 15-6542, 2018 WL 2984861, at *13 (E.D. Pa. June 14, 2018) ("the reputation-plus liberty interest 'is not accorded substantive due process protection; rather, the right accorded is that of procedural due process or more specifically the right to an opportunity to refute the charges and clear one's name.'") (internal citation omitted); *Mathews v. Abington Heights Sch. Dist.*, No. 22-959, 2024 WL 711610, at *8 (M.D. Pa. Feb. 21, 2024) ("We note that the defendant's brief discusses this claim as a *substantive* due process claim. But stigma-plus is actually a species within the phylum of procedural due process claims, not a variation of substantive due process.") (emphasis in original) (internal citations and quotations omitted).

[117] *Hill*, 455 F.3d at 236 (emphasis in original).

[118] *Smith*, 2018 WL 2984861, at *13.

[119] *Id.*

[120] *Hill*, 455 F.3d at 235 (citation and quotations omitted).

[121] ECF No. 6 ¶¶ 67–68.

[122] *Id.* ¶ 29 (emphasis added).

[123] *See Pavone v. Redstone Twp Sewer Auth.*, No. 20-1932, 2021 WL 4134035, at *8 (W.D. Pa. Sept. 10, 2021) (granting motion to dismiss "stigma plus" procedural due process claim against certain defendants because "Plaintiff does not identify any purportedly stigmatizing statements made by those Defendants"); *Zucal v. Cnty. of Lehigh*, No. 21-04598, 2023 WL 3997963, at *6 (E.D. Pa. June 14, 2023) ("We previously dismissed [the Fourteenth Amendment due process] claim because…Plaintiffs had failed to identify the substance of the alleged stigmatizing statements, whether Defendants made any of these statements, or whether they were false.").

[124] Fed. R. Civ. P. 12(e).

[125] *Energy Intel. Grp. Inc. v. PECO*, No. 21-2349, 2021 WL 4243503, at *2 (E.D. Pa. Sept. 17, 2021) (quoting *Strike 3 Holdings, LLC v. Doe Subscriber Assigned IP Address 68.82.141.39*, 370 F. Supp. 3d 478, 483 (E.D. Pa. 2019) (further citation omitted)).

[126] *Id.* (quoting *Godfrey v. Upland Borough*, 246 F. Supp. 3d 1078, 1086 (E.D. Pa. 2017)) (further citation omitted).

[127] Fed. R. Civ. P. 12(e); *see, Krantz v. Peerless Indem. Ins. Co.*, No. 18-3450, 2019 WL 1123150, at *3 (E.D. Pa. Mar. 12, 2019) ("Although Krantz's Complaint could be clearer, it is not so 'vague or ambiguous' that Peerless cannot respond.").

[128] *Luu v. Esterly*, 367 F. Supp. 3d 335, 348 (E.D. Pa. 2019) (citing 24 PA. STAT. ANN. 17-1714-A(a)(2)).

[129] 42 PA. CONS. STAT. § 8541.

[130] *Id.* § 8550.

[131] ECF No. 6 ¶ 71.

[132] *Id.* ¶ 30.

[133] *See Roussaw v. Mastery Charter High Sch.*, No. 19-1458, 2020 WL 2615621, at *10 (E.D. Pa. May 22, 2020) (rejecting defendants' immunity argument because a claim for intentional infliction of emotional distress is "inherently a claim of willful misconduct").

[134] *Doe v. Franklin Cnty.*, 174 A.3d 593, 603 (2017).

[135] *Caristo v. Blairsville-Saltsburg Sch. Dist.*, 370 F. Supp. 3d 554, 561–62 (W.D. Pa. 2019) (quoting *Mazza v. Tredyffrin Twp.*, No. 15-4245, 2016 WL 270220, at *2 (E.D. Pa. Jan. 21, 2016)).

[136] *Id.* at 562.

[137] *Afrika*, 2017 WL 1042075, at *6.